FILED
2021 FEB 26
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| JONATHAN PARRY,<br><br>　　　Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case #4:20-cv-00041-PK<br><br>Magistrate Judge Paul Kohler |

Plaintiff Jonathan Parry filed this action asking the court to remand the Commissioner of Social Security's decision denying his claim for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  (Pl.'s Opening Br. 1–2, Doc. No. 21.)  The Administrative Law Judge ("ALJ") determined Plaintiff did not qualify as disabled.  (Certified Transcript Administrative Record (hereafter "Tr. __") 28, Doc. Nos. 16–18.)  After review of the record, the parties' briefs, and arguments presented at a hearing held on February 11, 2021, the court[1] will affirm the Commissioner's decision.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner of the Social Security Administration.  This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards.  42 U.S.C.

---

[1] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Doc. No. 12.)

1

§ 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it." *Id.* (internal quotation marks omitted). Rather than mechanically accepting the ALJ's findings, the court will "'examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met.'" *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991)). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Moreover, the court may not substitute its judgment for that of the ALJ. *Langley*, 373 F.3d at 1118.

In addition, the court reviews whether the ALJ applied the correct legal standards. The court may reverse where the ALJ fails to do so. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate

circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."). Sufficient grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (citation omitted).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-part sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;
2) The claimant has a medically severe physical or mental impairment;
3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform his or her past work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## PROCEDURAL HISTORY

Plaintiff filed an application for disability and disability insurance benefits on September 25, 2017. (Tr. 188–194.) Plaintiff's claims were initially denied on March 14, 2018 and on reconsideration on February 1, 2019. (Tr. 78, 96.) Plaintiff requested a hearing before an ALJ (Tr. 133–134), which was held on December 5, 2019. (Tr. 35-75.) At the hearing, Plaintiff amended his alleged onset date to July 31, 2017. (Tr. 15, 372.) Plaintiff alleged disability based on PTSD and a number of physical impairments. (Tr. 372–374.)

The ALJ issued an unfavorable decision on December 18, 2019. (Tr. 12-34.) The ALJ determined that Plaintiff was not disabled. (Tr. 16, 28.) At step two of the sequential evaluation, the ALJ found Plaintiff had a number of severe physical impairments, including: disorder of the left him and right knee, disorder of the cervical and lumbar spine, asthma, disorder of the shoulders, obesity, and tinnitus. (Tr. 18.) However, the ALJ found Plaintiff's mental impairment of PTSD "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 19.) At step three, the

4

ALJ found Plaintiff's impairments did not meet a listing. (Tr. 20.) At step four, the ALJ found Plaintiff had the ability to perform "light work" subject to certain exceptions and limitations, and therefore was unable to perform his past work. (Tr. 20, 26.) However, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, given his age, education, work experience, and residual functional capacity. (Tr. 26.)

Plaintiff appealed this decision to the Appeals Council, which declined review on March 16, 2020. (Tr. 1–6.)

## ANALYSIS

Plaintiff alleges the ALJ erred by failing to properly evaluate his mental impairments. (Pl.'s Opening Brief 7, Doc. No. 21.) Plaintiff makes four allegations of error.

1. Finding of Nonsevere Mental Impairment

First, Plaintiff contends the ALJ erred in finding that Plaintiff's mental impairments were not severe at step two of the sequential evaluation. (Pl.'s Opening Br. 8–9, Doc. No. 21.)

Plaintiff argues the ALJ "failed to cite to evidence [that] was relevant to this determination." (*Id.* at 8.) Plaintiff notes the ALJ stated the record from 2010 to 2014 does not contain evidence of PTSD (Tr. 19), but he asserts those records were of "no value" because Plaintiff alleged an onset date in 2017. (Pl.'s Opening Br. 8–9, Doc. No. 21.) Plaintiff also challenges the ALJ's finding that, although Plaintiff began reporting issues with PTSD in 2017, he was better by July 2017—a finding based in part on Plaintiff's discussion with his therapist about opening a bakery. (*Id.* at 9.) Plaintiff argues this finding was unreasonable and contrary to other records showing Plaintiff had "suicidal ideation, sleep disturbance, anger issues, and issues interacting with his family," as well as "the fact that all providers who saw [Plaintiff] for his

5

mental impairment[] indicated that impairment was severe within the Social Security's definition." (*Id.*)

From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," *Lax*, 489 F.3d at 1084 (citation omitted), and the court may not substitute its judgment for that of the ALJ, *Langley*, 373 F.3d at 1118. Where a record contains more than a scintilla of relevant evidence that a reasonable mind might accept to support the challenged conclusion, substantial evidence supports that decision. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994); *Lax*, 489 F.3d at 1084.

Here, the ALJ found Plaintiff's "mental allegations [were] inconsistent with the medical evidence of record." (Tr. 19.) The ALJ acknowledged Plaintiff had a history of PTSD, anxiety, and depression, and that his mental health records "pick[ed] up around spring 2017." (Tr. 19.) Plaintiff. (Tr. 19.) However, although Plaintiff's LCSW opined in April 2017 that could not work due to anxiety and PTSD, the ALJ found this opinion was contradicted by "the vast majority of mental status examinations in her notes which are largely within normal limits." (Tr. 19.) The ALJ noted that by July 2017, Plaintiff "was noted to experience an improvement in mood and by August 2017 he and his therapist were brainstorming ways for him to open a business." (Tr. 19.) The ALJ also found the psychological consultative exam results and the examiner's opinion regarding Plaintiff's inability to work were not persuasive because they were "not consistent with the rest of objective and subjective medical evidence of record." (Tr. 19.)

Specifically, the ALJ noted Plaintiff's poor cognitive capacity results were inconsistent with his reported ability to manage money, care for his children, pay bills, drive, and read, as well as documented mental status examinations from other physicians which were "largely within normal limits." (Tr. 19.)  Finally, the ALJ noted Plaintiff had no inpatient hospitalizations, was independent in daily activities and reported stability on current medications. (Tr. 19.)  On this record, the ALJ found Plaintiff's mental impairments caused "no more than mild limitations in functioning" and were therefore nonsevere. (Tr. 19.)

The evidence cited by the ALJ constitutes substantial evidence to support his determination that Plaintiff's mental impairments were nonsevere.  The ALJ did not base his findings solely on the discussion between Plaintiff and his therapist regarding opening a bakery, but cited numerous other medical records to support his findings.[2]  The fact that the ALJ also referenced some medical records from before the alleged onset date is irrelevant, given the ample evidence after the alleged onset date to support the ALJ's findings.  The record shows the ALJ considered the opinions of Plaintiff's providers and the consultative examiner but found those opinions contrary to the majority of other medical evidence.  Because the ALJ's finding of a nonsevere mental impairment was supported by substantial evidence, the ALJ did not err at step two of the sequential evaluation.

---

[2] Tr. 472, 479–80, 483, 487, 627, 959, 966, 973, 979–80, 987-87, 1001 (mental status examinations from therapist); Tr. 684, 687, 691, 936 (mental status examinations from other providers); Tr. 249–51, 591 (reports of daily activities); Tr. 470 (bakery discussion).

2. <u>Listing 12.15</u>

Second, Plaintiff contends the ALJ erred in failing to make adequate findings regarding whether Plaintiff's impairments met Listing 12.15 at step three of the sequential evaluation. (Pl.'s Opening Br. 9–10, Doc. No. 21.)

At step three, a claimant has the "burden to present evidence establishing her impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, a claimant must establish that her impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis omitted). "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085; *see also* 20 C.F.R. § 404.1525. If the evidence implicates a specific listing, the ALJ is required to evaluate whether the claimant meets or equals that listing. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Listing 12.15 requires the presence of both the "A" criteria, which address the diagnostic presence of an affective disorder, and the "B" or "C" criteria, which address the severity of the impairment. 20 C.F.R. pt. 404, subpt. P, Appendix I § 12.15. There is no dispute Plaintiff's PTSD diagnosis satisfies the "A" criteria for Listing 12.15. (Pl.'s Opening Br. 10, Doc. No. 21; Def.'s Answer Br. 11, Doc. No. 24.) The "B" criteria require "extreme" limitation in one, or "marked" limitation in two, of four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) and adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, Appendix I § 12.15. The "C" criteria require a mental disorder that is "serious and persistent" as well as evidence of

both (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of the mental disorder"; and (2) "[m]arginal adjustment, that is, . . . minimal capacity to adapt to changes in [one's] environment or to demands that are not already part of [one's] daily life. *Id.*

The ALJ found Plaintiff did not have a "physical impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments," including Listing 12.15. (Tr. 20.) The ALJ stated he considered Plaintiff's "physical impairments, singly and in combination with his other impairments, along with his alleged symptoms and limitations" in making this determination. (Tr. 20.) The ALJ found that although Plaintiff had severe impairments, the record did not support the level of severity required to meet a listing. (Tr. 20.) The ALJ did not expressly reference "A," "B," or "C" criteria in the section of his decision addressing the listings. However, the ALJ acknowledged the PTSD diagnosis and considered the "B" criteria in evaluating the severity of Plaintiff's mental impairments at step two, finding only "mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself." (Tr. 19–20.)

Plaintiff contends the ALJ's failure to make specific findings regarding the "C" criteria of Listing 12.15 amounts is legal error. (Pl.'s Opening Br. 10, Doc. No. 21.) Plaintiff argues he met the "C" criteria of Listing 12.15 based on a form completed by Plaintiff's treating psychiatrist, Dr. Cusi, indicating his mental condition was "persistent" and that he had "marginal adjustment." (Pl.'s Opening Br. 10, Doc. No. 21 (citing Tr. 1070).)

The ALJ's failure to expressly reference the "C" criteria of Listing 12.15 does not require remand. As an initial matter, Plaintiff's hearing brief to the ALJ argued only that Plaintiff met

the "A" and "B" criteria of Listing 12.15. (Tr. 373.) Thus, the ALJ's decision addressed the specific criteria of Listing 12.15 which Plaintiff alleged he met. Additionally, the form cited by Plaintiff from Dr. Cusi shows she found Plaintiff did not meet all of the requirements for the "C" criteria of Listing 12.15. Specifically, Dr. Cusi indicated Plaintiff had "marginal adjustment" but not "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of the mental disorder." (Tr. 1070.) As set forth above, both requirements must be met to satisfy the "C" criteria. Thus, Dr. Cusi's opinion did not make findings sufficient to show Plaintiff satisfied the "C" criteria. Under these circumstances, where Plaintiff did not allege he met the "C" criteria and the evidence he cites does not support such a finding, the ALJ's failure to expressly discuss the "C" criteria in his decision is not legal error. The ALJ's decision indicates he considered Plaintiff's combination of impairments and found they did not meet or equal Listing 12.15 as a whole. (Tr. 20.) This is sufficient for the court to conclude the ALJ adequately evaluated Listing 12.15.

3. <u>Evaluation of Medical Opinion Evidence</u>

Third, Plaintiff asserts the ALJ failed to properly evaluate the medical opinions he submitted from three treating sources and an examining source. (Pl.'s Opening Br. 10–13, Doc. No. 21.)

Because Plaintiff's claim was filed after March 27, 2017, the ALJ must evaluate medical opinions under 20 C.F.R. § 404.1520c. Under this section, the ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinions. *Id.* § 404.1520c(a). Instead, the ALJ must consider medical opinions using the following factors: (1) supportability based on objective medical evidence; (2) consistency with other medical and nonmedical sources; (3) relationship with the claimant, including the length, purpose, and extent

10

of the treatment relationship; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 404.1520c(b)(2). The ALJ may use a single analysis for each medical source rather than each medical opinion. *Id.* § 404.1520c(b)(1).

    a. <u>Dr. Cusi</u>

The ALJ considered the medical opinions of Dr. Cusi, Plaintiff's treating psychiatrist. (Tr. 25.) Dr. Cusi indicated on a check-box form that Plaintiff had "moderate" impairment in four categories of functional limitations and "mild" or no impairment in the other eight categories listed. (Tr. 25.) The ALJ found Dr. Cusi's opinions unpersuasive because the check-box form contained "little to no explanation" and because they were inconsistent with other medical records showing "consistently normal mental status examinations." (Tr. 25.)

Plaintiff argues the ALJ failed to consider the required factors, including the fact that Dr. Cusi was his long-time treating specialist. (Pl.'s Opening Br. 11, Doc. No. 21.) Plaintiff also argues Dr. Cusi's opinions were supported by her treatment records and notes, which included detailed descriptions of Plaintiff's PTSD symptoms and showed test results for mild neurocognitive impairment. (*Id.*)

The record shows the ALJ considered the factors set forth in 20 C.F.R. § 404.1520c in evaluating Dr. Cusi's opinions. The ALJ stated she was Plaintiff's treating psychiatrist, indicating he considered her treating relationship with the claimant and her specialization. (Tr. 25.) And although Plaintiff identifies some record support for Dr. Cusi's opinions, the record also contains contrary medical evidence which the ALJ relied on in finding her opinions unpersuasive. Because the ALJ considered the required factors and his determination was supported by evidence in the record, the ALJ did not err in his evaluation of Dr. Cusi's opinion.

11

Plaintiff also argues the ALJ erred because he made no findings as to Dr. Cusi's opinion that he met a listing. (Pl.'s Opening Br. 11, Doc. No. 21.) However, as noted above, Dr. Cusi indicated that Plaintiff met only some of the requirements of the "C" criteria for Listing 12.15. (Tr. 1073.) For the reasons set forth above, the ALJ did not err in failing to expressly address the "C" criteria.

      b. Treating Therapist

The ALJ considered the opinion from Plaintiff's treating therapist that, in April 2017, Plaintiff was unable to work due to his anxiety and PTSD. (Tr. 19.) The ALJ found this opinion was contradicted by "the vast majority of mental status examinations in her notes which are largely within normal limits." (Tr. 19.) The ALJ also noted the therapy records showed Plaintiff was improving by July 2017 and discussing opening a business in August 2017. (Tr. 19.)

Plaintiff argues the ALJ failed to consider the required factors in evaluating the therapist's opinion, and he asserts her opinion was consistent with her notes regarding Plaintiff's symptoms. (Pl.'s Opening Br. 12, Doc. No. 21.) However, the record shows the ALJ considered her role as a treating therapist as well as the level of consistency between her opinion and other medical records. (Tr. 19.) Thus, the ALJ adequately evaluated the therapist's opinion under the required factors.

      c. Dr. Chamberlain

The ALJ considered the opinions of Dr. Chamberlain, Plaintiff's treating physician, that Plaintiff would be off task 20% of the workday and would miss four days or more of work each month. (Tr. 24–25, 667–68.) The ALJ found Dr. Chamberlain's opinion unpersuasive because it was "unsupported by and inconsistent with the record." (Tr. 25.) The ALJ stated that "[f]or

12

example, the record shows the claimant has normal strength and normal gait despite his multiple musculoskeletal problems." (Tr. 25.)

Plaintiff argues the ALJ erred by failing to acknowledge that Dr. Chamberlain's opinion was also based on Plaintiff's mental impairments. (Pl.'s Opening Br. 12, Doc. No. 21.) However, the ALJ referenced records regarding Plaintiff's physical limitations as merely one example contradicting Dr. Chamberlains' opinions. The ALJ cited to the entirety of Dr. Chamberlain's treating source statement, including his notes regarding Plaintiff's mental impairments. (Tr. 24, 667–68.) Thus, the record indicates the ALJ considered Dr. Chamberlain's notes regarding Plaintiff's mental impairments in evaluating his opinions. Moreover, earlier in the decision, the ALJ fully explained the medical record evidence supporting his finding that Plaintiff's mental impairments caused only mild limitations. (Tr. 19–20.) That discussion is sufficient to support the ALJ's finding that Dr. Chamberlain's opinions were inconsistent with the medical record.

    d. <u>Dr. MacDowell</u>

The ALJ also considered the opinion of Dr. MacDowell, the psychological consultative examiner. (Tr. 19.) Dr. MacDowell found Plaintiff's ability to relate was severely limited due to his PTSD; his concentration was poor; and he was unable to tolerate the stress of an 8-hour workday. (Tr. 561–62.) The ALJ found Plaintiff's "poor performance at the psychological consultative examination and the psychological consultative examiner's opinions should be considered less persuasive as they are not consistent with the rest of objective and subjective medical evidence of record." (Tr. 19.) The ALJ found Dr. MacDowell's opinions were inconsistent with Plaintiff's mental status examinations from other physicians, his reported activities, and his course of treatment. (Tr. 19.)

Plaintiff argues Dr. MacDowell's opinions were consistent with her exam and the medical record. (Pl.'s Opening Br. 13, Doc. No. 21.) However, as set forth above, the ALJ cited ample other medical evidence in the record contrary to her opinions, and this evidence is sufficient to support his evaluation of her opinion as unpersuasive.

For these reasons, the ALJ did not err in his evaluation of the medical opinion evidence from treating sources and the consultative examiner.

4. Request for Medical Expert Testimony

Finally, Plaintiff contends the ALJ erred in denying Plaintiff's request for a medical expert with a specialty in psychology to testify at the hearing. (Pl.'s Opening Br. 14–15, Doc. No. 21.) The ALJ found "[t]he need for such an expert's testimony is not supported by the objective evidence or the opinion of the claimant's own psychiatrist," which "offered very little in the way of limitations regarding at least simple, unskilled jobs." (Tr. 15.)

Plaintiff argues the ALJ's assertion that Plaintiff's treating psychiatrist "offered very little in the way of limitations" was incorrect. (Pl.'s Opening Br. 13, Doc. No. 21.) Plaintiff points to Dr. Cusi's finding of "moderate" impairment in four categories of functional limitations. (*Id.* at 15; Tr. 1072–73.) However, the ALJ noted Dr. Cusi's findings were made on a check-box form with "little to no explanation," (Tr. 15), and she did not address Plaintiff's ability to perform simple, unskilled jobs. (*See* Tr. 1072–73.) Thus, the ALJ's characterization of Dr. Cusi's opinions was reasonable.

Plaintiff also argues the ALJ's finding that the need for expert testimony was "not supported by the objective evidence" was erroneous, citing 20 C.F.R. § 404.1519a(b). (Pl.'s Opening Br. 14, Doc. No. 21.) However, that section addresses the circumstances in which a

14

consultative examination is required. Here, a consultative examination was already performed by Dr. Cusi, and 20 C.F.R. § 404.1519a(b) does not address the need for medical expert testimony. As set forth above, the medical evidence in the record was sufficient to support the ALJ's findings regarding Plaintiff's mental impairments. Thus, Plaintiff's argument is unavailing.

To the extent Plaintiff suggests a second consultative examination was required, (Pl.'s Opening Br. 14–15, Doc. No. 21), Plaintiff never requested a second examination at the hearing before the ALJ (or at any other time). Indeed, at the hearing in this appeal, Plaintiff's counsel clarified Plaintiff was only seeking medical expert testimony, not a second consultative examination. Accordingly, the ALJ did not err in failing to order a second consultative examination. *See Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

For these reasons, the ALJ did not err in denying Plaintiff's request for medical expert testimony.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

DATED this 26th day of February, 2021.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge

15